Filed 10/10/25  In re A.M. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D085882 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4786) |
| v. | |
| R.W., | |
| Defendant and Appellant; | |
| R.M., | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Mark T. Cumba, Judge. Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant Mother, R.W.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Respondent Father, R.M.

Lisa M. Maldonado, Chief Deputy County Counsel, Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

## I.    INTRODUCTION

After Mother failed to reunite with A.M. (Child) due to continued alcohol use, the juvenile court placed Child with R.M. (Father), awarded Father sole legal and physical custody, and terminated the court's jurisdiction.  R.W. (Mother) appeals the order, contending the trial court erred in granting Father sole legal custody by failing to consider Child's best interests.  We disagree and affirm.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In 2022, the San Diego Health and Human Services Agency (Agency) filed a juvenile dependency case under Welfare and Institutions Code[1] section 300 on behalf of Child[2] due to concerns about Mother's mental health and alcohol use.  Mother completed reunification services including parenting classes, therapy, Alcoholics Anonymous (AA), and substance abuse treatment.  Child remained in Father's care throughout the case.  Mother resided out of the house for several months, but she returned shortly before the case was closed in January 2023.

In August 2023, the Agency filed a second juvenile dependency case under section 300, subdivision (b), alleging Child suffered or was at risk of suffering serious physical harm or illness due to Mother's alcohol use and Child's exposure to multiple instances of domestic violence by Mother against Father.

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

[2]    Child was one year old when the Agency filed the 2022 petition concerning Child.

2

In one instance, Mother swung at Father's face, breaking his glasses. Police arrested Mother for domestic violence, vandalism, resisting arrest, battery against an officer, and obstruction. The police officer noted Mother was "heavily intoxicated." Child witnessed the incident. The court granted Father an emergency protective order.

Mother twice declined the Agency's offer to connect her with a substance use specialist. The social worker explained the specialist would complete an assessment to determine what services Mother would need to address her substance abuse. Mother said she was already participating in AA, therapy, and working with two sponsors.

At the detention hearing, the juvenile court found that the Agency made a prima facie showing for jurisdiction, and that removal from Mother was necessary due to Mother's alcohol abuse and domestic violence. The court detained Child with Father on the condition that Mother remain out of the house and in compliance with the no-contact restraining order. The court ordered liberal, separate, and supervised visitation for Mother.

At the contested adjudication and disposition hearing in September 2023, the juvenile court sustained the Agency's petition and found true the allegation that jurisdiction of Child was appropriate under section 300, subdivision (b)(1). The court found by "clear and convincing evidence that removal of the child from the Mother is appropriate" under section 361, subdivision (c)(1) due to the evidence of domestic violence and substance abuse. The court ordered family maintenance services for Father and enhancement services for Mother.

Mother was referred to domestic violence offender group therapy in October 2023, but after only a few sessions, she stopped attending, saying it conflicted with her school schedule.

Shortly thereafter, the Agency filed a supplemental petition under section 387 to change the placement of Child to a foster home because Father allowed Mother to reside in the family home in violation of the orders prohibiting contact between the parents. The juvenile court found the Agency made a prima facie showing that removal from Father was necessary. The court detained Child in a foster home.

A few days later, a vehicle struck Mother as she was walking along a highway after she crashed her vehicle. Witnesses reported Mother was intoxicated at the time of the accident. Mother sustained a brain bleed and internal injuries.

At the December 2023 contested hearing on the Agency's section 387 petition,[3] the juvenile court sustained the Agency's petition. The court found clear and convincing evidence that Child should continue to be removed from the custody of Father and that placement with Mother would be detrimental to Child due to Mother's ongoing substance abuse. The court ordered Child placed in a foster home with reunification services for the parents.

Mother began outpatient substance abuse treatment in December 2023. She relapsed in February 2024 and again in March 2024. Thereafter she entered a 60-day inpatient substance abuse program.

Father completed his parenting support services in February 2024. By May 2024, he completed participation in a domestic violence victim group and transitioned to unsupervised visits with Child.

At a hearing in July 2024, the court adopted the Agency's recommendation for overnight visits for Father and continuing reunification

---

[3]    Section 387, subdivision (b) states a supplemental petition "shall be filed by the social worker in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the . . . protection of the child . . . ."

services for both parents.  By this time, Mother had completed 90 days of sobriety, resided in a sober living home, resumed participation in a year-long domestic violence program, and had weekly supervised visits with Child.

After Child completed a 60-day trial visit with Father, the court adopted the Agency's recommendation in November 2024 to place Child with Father.  The court ordered continuation of family maintenance services for Father and enhancement services for Mother.

At the scheduled 12-month review hearing on December 12, 2024, the Agency again recommended continued placement of Child with Father with family maintenance services.  For Mother, the Agency recommended unsupervised and overnight visits with Child with enhancement services. Mother was complying with her case plan, including participation in a domestic violence program.  She completed an outpatient substance abuse program, was working with a counselor, and submitted to drug tests, which were negative.  Mother set the matter for trial on the issue of terminating jurisdiction.

Then, after a relapse, Mother's sober living home discharged her.  A few days later, Child's school asked Father to pick up Child because Mother failed to show.  Mother did not answer phone calls or respond to text messages from the Agency for several days.

In early January 2025, Mother informed the Agency she was enrolled in an inpatient detox program.  Mother did not respond to the Agency's follow-up calls, text messages, or emails inquiring about her progress. Mother's domestic violence counselor reported to the Agency that Mother missed a class, was late to another, and appeared under the influence on at least two occasions.  Mother reported she relapsed due to stress and because

she stopped taking one of the medications that reduced alcohol cravings. Due to her relapse, Mother's visits with Child reverted to supervised visits.

At the scheduled, contested 12-month review hearing in February 2025, the Agency recommended that Child remain with Father, that jurisdiction be terminated, and that Mother have supervised visits. Mother agreed with the recommendation. The court continued the hearing at the request of Child's counsel.

Mother did not visit with Child throughout February, and she did not respond to the Agency's request to drug test. Mother informed the Agency in March 2025 that though previously enrolled in a drug treatment program, due to illness she dropped out and needed to reenroll. The Agency continued to recommend Child remain with Father, that jurisdiction be terminated, and that Mother have supervised visits.

The contested 12-month review hearing proceeded on March 12, 2025. Despite reservations, Child's counsel withdrew objections regarding terminating jurisdiction. Mother objected to Father having sole legal custody and requested joint legal custody. She also requested striking a requirement for her to participate in further treatment, stating she attends AA meetings. The court terminated jurisdiction, granted Father sole legal and physical custody of Child, and ordered reasonable supervised visits and substance abuse treatment for Mother. As requested by the parties, the court modified the restraining order to allow for peaceful contact between Father and Mother. Mother appealed.

## III. DISCUSSION

Mother contends the juvenile court's order granting Father sole legal custody is not in Child's best interests because it overlooks "the love and bond [Child] shared with [M]other." Mother also argues that the order "[l]imiting

6

[her] to only monitored visits . . . was not supported by substantial evidence."[4] We conclude the court acted within its discretion.

A.     Guiding Principles

When the juvenile court terminates jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation (or "exit") orders. (*In re Chantal S.* (1996) 13 Cal.4th 196, 203.) In issuing an exit order, the juvenile court must consider the best interests of the child. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712–713.) The family law presumption favoring joint custody does not apply to juvenile court custody orders entered after terminating jurisdiction. (*Id.* at pp. 711–713.)

We review a juvenile court's custody award pursuant to section 362.4 for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.) The juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.)

"The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted; *In re Amy M.*

---

[4]     We interpret the term "monitored visits" as supervised visits.

(1991) 232 Cal.App.3d 849, 859–860 [issues of fact are reviewed for substantial evidence].)

B.     Analysis

Mother has not established abuse of discretion by the juvenile court. After receiving reunification services, participating in therapy, and undergoing treatment for substance abuse, Mother progressed to unsupervised and overnight visits with Child.  Nevertheless, Mother relapsed and failed to pick up Child from school.  She continued to drink, missed counseling sessions, stopped taking her medication, ignored the Agency's requests that she get drug tested, and failed to schedule visits with Child.

Mother enrolled in substance use programs, but she did not complete treatment.  At the time of the 12-month review hearing, Mother was not in treatment, and she did not want more treatment.  Given that the initial protective issue was Mother's substance abuse, the court could reasonably determine it was in Child's best interest to vest sole legal and physical custody in Father to minimize the risk of harm to Child when Mother continued to drink and would not undergo treatment.  (*Jennifer R., supra,* 14 Cal.App.4th at p. 713 [vesting sole legal and physical custody in father alleviated protective issues and was in child's best interests].)  While the court did not use the phrase "in the best interest of the child," its decision is supported by substantial evidence in the record and does not exceed the bounds of reason.  (*J.M. v. G.H.* (2014) 228 Cal.App.4th 925, 935 ["We draw all reasonable inferences in support of the court's ruling and defer to the court's express or implied findings when supported by substantial evidence."].)  The Agency and Child's counsel supported the award of sole legal custody to Father.  Father has been a sober custodial parent making decisions regarding Child's health, education, and welfare.  And meanwhile,

8

Child is thriving in Father's care. Accordingly, the juvenile court did not abuse its discretion by awarding sole legal custody to Father.

Mother argues that "[l]imiting [her] to only monitored visits" is not supported by substantial evidence. Mother requested that "the custody orders reflect that her visits [would] be supervised by a mutually agreed upon third party or a professional, paid by the Mother." The language in the custody order reflected Mother's request, and Mother expressed she was "fine with this [custody order] as drafted." Because the juvenile court issued the custody order that Mother agreed to, we deem the issue forfeited. (*In re D.P.* (2023) 92 Cal.App.5th 1282, 1292–1293 [forfeiture applies in dependency proceedings]) and Mother cannot raise it on appeal.

DISPOSITION

The order is affirmed.

RUBIN, J.

WE CONCUR:

BUCHANAN, Acting P. J.

HUFFMAN, J.*

---

\*    Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.